I, Timothy Roberts, being first duly sworn, do hereby depose and state as follows:

1. I have been a Special Agent with the Federal Bureau of Investigation (hereinafter the "FBI") since 2016. I am a graduate of the FBI Training Academy in Quantico, Virginia, where I received training in violent crime investigations, white-collar crime, cyber-crime, crimes against children, interviewing, interrogation, evidence collection, intelligence analysis, and legal matters, among other topics. I am currently assigned to the Beckley, West Virginia Resident Agency of the Pittsburgh Division. Prior to my current assignment, I was assigned to the New York Field Office of the FBI where I was assigned to international terrorism investigations. Prior to my employment with the FBI, I was a police officer from 2008 to 2016. 1 have experience investigating terrorism matters, violent crimes, and child exploitation offenses, as well as other violations of federal law.

2. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. This Affidavit is intended to show that there is sufficient probable cause for the requested complaint and does not set forth all my knowledge about this investigation.

3. On February 01, 2024, at approximately 6:28 PM, McDowell County, West Virginia. Sheriff Deputy DALTON MARTIN received a notification from a remote monitored camera system owned by the McDowell County Sheriff's Office, a Reveal X Cam 2.0, that two male subjects had passed a locked gate onto posted no trespassing property in the area of Cellular Road in McDowell County West Virginia, near the Federal Correctional Institution McDowell (hereinafter, "FCI McDowell"). The notification included images of the individuals as they passed the camera, and the two subjects were later identified as FRANCISCO ALEJANDRO GONZALEZ and MIGUEL ANGEL ALEMAN-PICENO.

The subjects could be seen carrying a book bag and a duffle bag. The remote camera system also recorded the subjects preparing an Unmanned Aerial System (hereinafter "UAS"), commonly known as a drone, for flight.

4. Deputy MARTIN and other responding officers confronted the two individuals. They found a UAS and a backpack containing two packages that had been spray painted green and had a leafy substance glued to them to camouflage them. Both suspects also had firearms.

5. The contents of the two packages included a leafy green substance believed to be marijuana, a leafy brown substance believed to be tobacco, four (4) cell phones, chargers for the phones, and three prepaid minutes cards for cell phones.

6. Sheriff MUNCY, McDowell County West Virginia Sheriff's Office canvassed the area while officers were surveilling and confronting GONZALEZ and PICENO and located an Infiniti sedan displaying Illinois registration at the Pocahontas Motel, which is a short distance from Federal Correctional Institution McDowell. Sheriff MUNCY approached the vehicle and made contact with the driver, identified as ARTURO JOEL GALLEGOS. During that contact, Sheriff MUNCY could smell the odor of marijuana coming from the vehicle, which GALLEGOS had just exited, and GALLEGOS was placed under investigative detention. A search warrant for the vehicle was obtained and the search of the vehicle found a UAS storage case, digital scale, adhesive spray, fake grass, white tape and paint, a vacuum sealer, food sealing plastic, two bags of tobacco, a substance believed to be marijuana, firearms ammunition, extra magazines for firearms, and one roll of fishing line.

7. PICENO was interviewed at the McDowell County Sheriff's Office by Deputy MARTIN and provided a recorded and Mirandized statement. He stated that he was from Chicago and that he got to West Virginia in his friend's car. He stated that he was the driver and that he transported two other people (GALLEGOS and GONZALEZ). His purpose for coming to McDowell County West Virginia was to potentially make some money, though he didn't know what he was going to be doing until he arrived. He thought he would be making $3,000.00 and found out that he would be making the money by flying a drone with "things attached to it."

8. PICENO stated that he thought that tobacco and cell phones were attached to the drone in packages and that the drone that was collected at the time of his arrest was the drone he intended to fly with the purpose of delivering those packages. When asked if he was supposed to fly the drone into the Federal Correctional Institution, he confirmed that he was.

9. PICENO stated that he did not make the packages, he received them in a backpack at his home. PICENO did not know which inmate the packages were meant to be delivered to.

10. The presence of numerous cell phones, chargers, camouflage material are instrumentalities consistent with the act of introducing contraband into FCI McDowell which is close in proximity to the hotel the defendant's occupied. Additionally, the drones detected and seized from defendants were being operated without proper licensure as provided by federal law over FCI McDowell, a federal prison facility.

Further the Affiant sayeth naught.

*[signature]*
Special Agent, FBI
7/8/24

Sworn to before me this 8th day of July, 2024.

*[signature]*

Omar J. Aboulhosn
United States Magistrate Judge